IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JONATHAN GAUTIER, | ) |
| Plaintiff, | ) Case No. 7:14-cv-00621 |
| v. | ) |
| CELANESE a/k/a Celanese Acetate, LLC, a/k/a Celanese Corporation, | ) By: Michael F. Urbanski ) United States District Judge |
| and | ) |
| JOSEPH J. FOX | ) |
| Defendants. | ) |

MEMORANDUM OPINION

This case is an employment dispute involving an employee's prescription drug use. Plaintiff Jonathan Gautier ("Gautier") claims that his employer, Celanese, violated the Americans with Disabilities Act ("ADA") when it suspended him from work until he reduced his use of prescription pain medicine and self-enrolled in an Employee Assistance Program ("EAP") for drug dependency. The dispute over Gautier's suspension was previously submitted to arbitration pursuant to the collective-bargaining agreement ("CBA") between Celanese and the Celanese Acetate & Workers United, Local 1995 (the "Union"). The preclusive effect of that arbitration is the sole issue raised by the parties.

Before the court is the defendants' motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure, ECF No. 18, and Gautier's motion to deny in part the motion for summary judgment pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, ECF No. 20. The matter has been fully briefed, and the court heard oral argument on September 30,

1

2015.  For the reasons set forth below, the court will not give preclusive effect to the arbitration decision and will thus **DENY** the defendants' motion for summary judgment, ECF No. 18.  The court also **DENIES as moot** Gautier's motion to deny in part the motion for summary judgment, ECF No. 20.

## I.

In 2002, Gautier suffered a serious injury at the Celanese plant while he was working in a mechanical lift that overturned.[1]  Compl., ECF No. 1, at ¶ 10.  He returned to work six months later, and was employed at Celanese during all times relevant to this case until the company placed him on medical leave on May 23, 2013.  Id. at ¶¶ 6, 8, 16.  Gautier still suffers pain associated with his prior injury, and has been prescribed various pain medications since 2002.  Id.  In 2011, Celanese administered a drug test that discovered hydrocodone and Percocet in Gautier's blood.  Arbitration Decision, ECF No. 19-7, at 9.  The company took no action because Gautier had prescriptions for both drugs and there was no indication that the drugs affected his performance.  Id.

On or about April 8, 2013, however, Celanese supervisors noticed that Gautier appeared impaired during shifts.  Id.  One supervisor observed Gautier crushing and snorting pills at work.  Id.  Gautier also appeared tired, would bump into walls, and failed to maintain alertness.  Id. at 10–12.  When the behavior continued, the company restricted Gautier from work and sent him to get a medical evaluation.  Id. at 12.  The Union requested that Gautier not be drug tested, Celanese agreed, and the company instead put Gautier on medical leave, effective May 24, 2013.  Id. at 12–13.  The Union and Celanese also agreed that Gautier would benefit from an EAP drug rehabilitation course.  Id.  Gautier disputes that anyone told him to attend EAP.  After being on medical leave for several weeks, Gautier received permission from his private doctors to return to work.  Id. at 14–16.

---

[1] Because of the unique procedural posture of this case, no discovery took place before the defendants filed their motion for summary judgment.  The court thus relies on the facts as presented in both Gautier's complaint and the arbitration decision.

2

One of these doctors—Dr. Robert Devereaux—believed that Gautier's drowsiness was caused by a combination of allergy pills and Gautier's normal regimen of prescription pain medication. Id. at 14–15. Celanese claims that Dr. Devereaux's opinion is flawed because Gautier was not forthright about the extent of his drug use.

Gautier returned to Celanese on July 15, 2013 with a work release effective July 20, 2013. Id. at 16. Gautier admitted he was taking Percocet, hydrocodone, and several other medications, but claimed they were prescribed by his doctor. Id. Celanese administered a drug test, which showed Percocet and several other drugs in Gautier's blood, but no hydrocodone. Id. at 16–17. Gautier provided a current prescription for hydrocodone and the other drugs, but could provide no prescription for Percocet. Id. Gautier later presented an expired Percocet prescription dated June 14, 2012, over a year prior to his positive drug test. Id. at 17. Dr. Kevin Soden, the medical director at Celanese, refused to clear Gautier to return to work. Id. at 18–19. Based on the combination of drugs Gautier was taking and his failure to provide a current prescription for Percocet, Dr. Soden believed Gautier had a drug problem. Id. The company refused to lift Gautier's suspension until he reduced his use of narcotics and attended a rehabilitation program. Id.

Gautier filed a grievance through the Union, seeking clearance to return to work. At the same time, he filed the current complaint in federal court on November 12, 2014. The grievance was submitted to arbitration in December 2014 and January 2015, resulting in an arbitration decision favoring Celanese. The arbitrator found, among other things, that: (1) Gautier was suffering a serious work impairment in July 2013; (2) Gautier failed to inform his doctors about the full extent of his drug use; (3) Dr. Soden had a reasonable concern about Gautier's ability to work safely; and (4) Gautier must attend a rehabilitation program before returning to work. Id. at 21–28.

Gautier has two claims before this court: (1) a failure to accommodate claim against Celanese under the ADA and (2) a state-law defamation claim against Celanese and Joseph Fox ("Fox"). The

3

basis for the defamation claim is a letter sent by Fox, an employee of Celanese, to Gautier's counsel that described Gautier as a "drug abuser," stated he made other Celanese employees feel unsafe, and claimed that he failed to complete drug counseling.

## II.

Pursuant to Federal Rule of Civil Procedure 56(a), the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Glynn v. EDO Corp., 710 F.3d 209, 213 (4th Cir. 2013). When making this determination, the court should consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . [any] affidavits" filed by the parties. Celotex, 477 U.S. at 322. Whether a fact is material depends on the relevant substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. (citation omitted). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).

In determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the non-moving party. Glynn, 710 F.3d at 213 (citing Bonds v. Leavitt, 629 F.3d 369, 380 (4th Cir. 2011)). Indeed, "[i]t is an 'axiom that in ruling on a motion for summary judgment, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor.'" McAirlaids, Inc. v. Kimberly-Clark Corp., No. 13-2044, 2014 WL 2871492, at *1 (4th Cir. June 25, 2014) (internal alteration omitted)

4

(citing Tolan v. Cotton, 134 S. Ct. 1861, 1863 (2014) (per curiam)). Moreover, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ." Anderson, 477 U.S. at 255. However, the non-moving party "must set forth specific facts that go beyond the 'mere existence of a scintilla of evidence.'" Glynn, 710 F.3d at 213 (quoting Anderson, 477 U.S. at 252). Instead, the non-moving party must show that "there is sufficient evidence favoring the non[-]moving party for a jury to return a verdict for that party." Res. Bankshares Corp. v. St. Paul Mercury Ins. Co., 407 F.3d 631, 635 (4th Cir. 2005) (quoting Anderson, 477 U.S. at 249). "In other words, to grant summary judgment the Court must determine that no reasonable jury could find for the non[-]moving party on the evidence before it." Moss v. Parks Corp., 985 F.2d 736, 738 (4th Cir. 1993) (citing Perini Corp. v. Perini Const., Inc., 915 F.2d 121, 124 (4th Cir. 1990)).

### III.

The defendants claim they are entitled to summary judgment on two grounds. First, they argue that Gautier's ADA and defamation claims fail because the arbitration decision already decided the relevant factual issues in their favor, and thus issue preclusion applies. Next, even if issue preclusion does not apply, the defendants argue that the arbitrator's findings on contractual matters should eliminate Gautier's claims under the ADA.

### A.

At the outset, both parties agree that this court can consider the arbitration decision when it analyzes Gautier's ADA claim. Likewise, neither party challenges the general rule that courts have discretion to decide what weight, if any, to give an arbitrator's factual findings when those findings are submitted in a subsequent federal lawsuit. See Hawkins v. Leggett, 955 F. Supp. 2d 474, 502 (D. Md. 2013), aff'd sub nom. In re Canarte, 558 F. App'x 327 (4th Cir. 2014). The only issue raised in the defendants' motion is whether an unreviewed arbitration decision can create issue preclusion in a

5

subsequent federal suit under the ADA. The circuits have split on the issue: the Fifth Circuit allows courts to give preclusive effect to arbitration decisions in later federal discrimination claims, see Grimes v. BNSF Ry. Co., 746 F.3d 184, 188 (5th Cir. 2014), while the Sixth and Seventh Circuits restrict use of issue preclusion in such cases.[2] Coleman v. Donahoe, 667 F.3d 835, 854 (7th Cir. 2012); Nance v. Goodyear Tire & Rubber Co., 527 F.3d 539, 547–49 (6th Cir. 2008). The Fourth Circuit has not yet addressed the issue. For the reasons stated below, the court will adopt the majority approach and will not apply issue preclusion in Gautier's ADA claim.

### 1.

A series of Supreme Court cases address the preclusive effect of arbitration decisions. The traditional rule forbids courts from giving preclusive effect to arbitration decisions in later claims brought pursuant to federal civil rights statutes and regulatory legislation, including 42 U.S.C. § 1983, Title VII, the ADA, the Age Discrimination in Employment Act ("ADEA"), the Fair Labor Standards Act ("FLSA"), and the Employee Retirement Income Security Act ("ERISA"). See 18B Charles Alan Wright et al., Fed. Prac. & Proc. § 4475.1 (2d ed.). This rule was established by a trio of Supreme Court decisions: Alexander v. Gardner-Denver Co., 415 U.S. 36 (1974); Barrentine v. Ark.-Best Freight Sys., Inc., 450 U.S. 728 (1981); and McDonald v. City of West Branch, Mich., 466 U.S. 284 (1984).

In Gardner-Denver, the Court held that a plaintiff could file suit under Title VII even though he raised a similar claim during the arbitration of a prior contractual dispute between the plaintiff and his employer. 415 U.S. at 59–60. While the plaintiff's contractual dispute and

---

[2] At least two other circuit courts have held that federal courts are not bound by an arbitrator's factual findings in subsequent suits under 42 U.S.C. § 1983. See Wiedemann v. City of Oklahoma City, 76 F. App'x 931, 932 (10th Cir. 2003) (unpublished); Williams v. Perry, No. 00-7366, 2000 WL 1506086, at *2 (2d Cir. 2000) (unpublished). While the same policies favoring de novo review of § 1983 claims apply to ADA claims, see 18B Charles Alan Wright et al., Fed. Prac. & Proc. § 4475.1 (2d ed.), the precedential value of the unpublished opinions in Wiedemann and Williams is unclear.

subsequent statutory claim were based on identical facts, the Court held that contractual disputes under a CBA were of a "distinctly separate nature" than the "independent statutory rights accorded by Congress," such that arbitration of the former did not preclude litigation of the latter. Id. at 49–50. The Court adopted a similar rule in Barrentine for claims filed under the FLSA. See 450 U.S. at 737–46. The Barrentine Court held that FLSA claims were "independent of the collective-bargaining process" and thus were not barred even where a plaintiff had submitted similar claims to arbitration pursuant to a CBA. Id. at 745–46. McDonald extended Gardner-Denver and Barrentine even further, finding that "in a § 1983 action, a federal court should not afford preclusive effect to an award in an arbitration proceeding brought pursuant to the terms of a collective-bargaining agreement." 466 U.S. at 292.

The decisions in Gardner-Denver, Barrentine, and McDonald all reflect a concern for the rights guaranteed by federal anti-discrimination statutes. Where a plaintiff-employee has not contracted away his right to seek relief under federal law—and has instead reserved the ability to vindicate his statutory rights in a judicial forum—the Supreme Court requires federal courts to independently review the relevant factual issues. While courts may consider arbitration decisions as part of their review, the court alone must "exercise [the] final responsibility" to enforce federal statutory rights. See Gardner-Denver, 415 U.S. at 56. Finally, while Gardner-Denver and its progeny deal specifically with the issue of claim preclusion, dicta from these cases suggests that the same principles apply to issue preclusion. See id. at 49 n.10 ("[T]he policy reasons for rejecting the doctrines of election of remedies and waiver in the context of Title VII are equally applicable to the doctrines of res judicata and collateral estoppel."); McDonald, 466 U.S. at 292 ("[I]n a § 1983 action, a federal court should not afford res judicata or collateral estoppel to effect an award in an arbitration proceeding brought pursuant to the terms of a collective bargaining agreement.").

7

As the defendants note, however, the Supreme Court reversed course somewhat in a second trio of cases. First, in Gilmer v. Interstate/Johnson Lane, 500 U.S. 20 (1991), the Court ruled that an employee can waive his right to a judicial remedy under the ADEA in an arbitration agreement. Id. at 23–26. Absent evidence that arbitration was inconsistent with the ADEA's purpose, the Court held that employees could be forced into binding arbitration if a contract clearly provided for it. Id. The Court later affirmed this rule in Circuit City Stores, Inc. v. Adams, 532 U.S. 105 (2001), holding that an employer could compel arbitration of statutory claims pursuant to an arbitration clause in an employment contract. Id. at 123–24.

Finally, in 14 Penn Plaza LLC v. Pyett, 556 U.S. 247 (2009), the Court upheld a CBA that "clearly and unmistakably" required union members to arbitrate ADEA claims. Id. at 251. Citing new confidence in arbitration, the Court held that the ADEA's policy goals were advanced even where a CBA prevented courts from hearing discrimination claims. Id. at 265–66. The 14 Penn Plaza case is notable for its strong defense of arbitration as a viable forum in which to vindicate federal rights, and its critique of Gardner-Denver, Barrentine, and McDonald for their "misconceived view of arbitration." 556 U.S. at 265. However, 14 Penn Plaza left open the issue of whether an arbitrator's factual findings could create issue preclusion in a later federal discrimination suit.

## 2.

In this case, defendants argue that Gilmer, Circuit City, and 14 Penn Plaza overrule Gardner-Denver and its progeny to the extent those prior cases allowed a plaintiff to re-litigate factual issues addressed during arbitration. In support, defendants cite Grimes v. BNSF Ry. Co., 746 F.3d 184 (5th Cir. 2014). In Grimes, the Fifth Circuit held that courts have discretion to collaterally estop litigation of factual issues already decided in arbitration, even in a plaintiff's later claim under federal law. Id. at 188. The Fifth Circuit described a list of factors to guide lower courts in deciding

8

whether to give preclusive effect to arbitration decisions, including whether: (1) the "procedural differences between arbitration and the district court might prejudice the [defensive party];" (2) the arbitrator was "experienced and disinterested;" and (3) the arbitrator's findings "were within his authority and expertise." Id. at 188.

To reach its decision, the Fifth Circuit read Gardner-Denver, Barrentine, and McDonald to address only claim preclusion, not issue preclusion. See Grimes, 746 F.3d at 187. While Grimes acknowledged dicta from McDonald that discussed issue preclusion, it nevertheless held that prior precedent did not "prohibit a court from applying collateral estoppel." Id. The Fifth Circuit rested its decision, in part, on 14 Penn Plaza, noting that this case "limited" Gardner-Denver, Barrentine, and McDonald to the extent that "these [three prior] cases were based on a distrust of the arbitration process." Grimes, 746 F.3d at 187 n.2. The defendants ask this court to adopt the reasoning from Grimes to hold that the arbitration decision in favor of Celanese precludes Gautier from re-litigating the factual issues underlying his ADA claim. For several reasons, the court declines to do so.

First, Grimes does not control this court. The defendants cite no Fourth Circuit precedent to support their position, and the court is unaware of any Fourth Circuit case to address the issue. Further, this court believes Grimes was too quick to dismiss the Gardner-Denver/Barrentine/McDonald line of cases. While 14 Penn Plaza limits Gardner-Denver, Barrentine, and McDonald, it does not overrule them. See Mathews v. Denver Newspaper Agency LLP, 649 F.3d 1199, 1201 (10th Cir. 2011) ("The circumstances under which civil rights claims may be litigated despite a prior arbitral ruling have been long established under [Gardner-Denver] and 14 Penn Plaza does nothing to disturb the rule set forth therein."). And Gardner-Denver and its progeny counsel against applying either claim preclusion or issue preclusion in later federal discrimination cases, at least in cases where the arbitration agreement does not specify that preclusion should apply.

9

For example, as noted above, the Supreme Court stated in Gardner-Denver that "[t]he policy reasons for rejecting the doctrines of election of remedies and waiver in the context of Title VII are equally applicable to the doctrines of res judicata and collateral estoppel." 415 U.S. at 49 n.10. The Court affirmed this approach in McDonald, noting that "a federal court should not afford res judicata or collateral estoppel to effect an award in an arbitration proceeding brought pursuant to the terms of a collective bargaining agreement." 466 U.S. at 292. Even the decision in 14 Penn Plaza—which was otherwise critical of Gardner-Denver and its progeny—recognized that these prior cases prohibit use of res judicata or collateral estoppel in cases where a CBA does not require employees to arbitrate federal statutory claims. See 556 U.S. 262–64 (discussing the holdings in Gardner-Denver, Barrentine, and McDonald). To be sure, Grimes did acknowledge—and ultimately dismissed—the dicta in McDonald that counsels against issue preclusion. But the Fifth Circuit did not account for identical language in Gardner-Denver that also counsels against issue preclusion, nor did it address the Supreme Court's discussion of claim preclusion and issue preclusion in 14 Penn Plaza.[3]

Moreover, Grimes represents a minority approach to the issue of arbitration preclusion. The Sixth and the Seventh Circuits, among others, hold that arbitration decisions have no preclusive effect in later federal discrimination claims. See Coleman v. Donahoe, 667 F.3d 835, 854 (7th Cir. 2012); Nance v. Goodyear Tire & Rubber Co., 527 F.3d 539, 547–49 (6th Cir. 2008). The Sixth Circuit in Nance interpreted Gardner-Denver, Barrentine, and McDonald as forbidding courts to

---

[3] Grimes also did not address seemingly conflicting precedent from its own circuit. For example, in Gonzalez v. S. Pac. Transp. Co., 773 F.2d 637 (5th Cir. 1985), the Fifth Circuit reviewed precedent from Gardner-Denver, Barrentine, and McDonald, noting that "[e]ven if the same claim and factual allegations were determined by binding arbitration, [a] plaintiff is entitled to de novo review in a federal court [on his federal discrimination claims] and doctrines of res judicata or collateral estoppel are inapplicable." Id. at 643. While Gonzalez addressed claims under 45 U.S.C. § 60 and not a federal anti-discrimination statute, a later unpublished opinion in the Fifth Circuit applied the same preclusion rules to claims filed under Title VII. See Grappe v. Kansas City S. Ry. Co., 71 F. App'x 302, 303 (5th Cir. 2003) (unpublished) ("[B]ecause different policies underlie the proceedings before the [arbitrator] and the Title VII action before the court, collateral estoppel is not available.").

10

apply collateral estoppel in ADA claims when a previous arbitration addressed only an employee's contractual rights under a CBA.  Id. at 547.  Instead, the Sixth Circuit held that courts must independently review the factual issues relevant to an employee's rights under the ADA.  Id. at 547–49.  While Nance was decided before 14 Penn Plaza and Grimes, it is still good law in the Sixth Circuit.  See Shaltry v. City of Saginaw, No. 09-10609-BC, 2011 WL 252518, at *4 (E.D. Mich. Jan. 20, 2011).

The Seventh Circuit adopted a similar approach in Coleman.  Citing Gardner-Denver, the Seventh Circuit affirmed that courts should not give preclusive effect to arbitration decisions in later federal discrimination claims.  667 F.3d at 852.  The Seventh Circuit noted that 14 Penn Plaza carved out only a narrow exception to this general rule.  In cases where a CBA "explicitly mandate[s]" arbitration of statutory claims, a court can apply claim or issue preclusion to prevent re-litigation of issues decided by an arbitrator.  Id. at 854 (citing 14 Penn Plaza, 556 U.S. at 262).  But where a contract is silent about arbitration of statutory claims, courts need not raise the insurmountable hurdles of claim preclusion and issue preclusion.  Id.  The CBA in Coleman did not require employees to arbitrate their Title VII claims, and the Seventh Circuit thus held that an arbitration decision favoring the employer did not trigger issue preclusion in the employees' later federal suit.  Id.  Both Coleman and Nance supports Gautier's argument against preclusion in this case.

Finally, the CBA between Gautier and Celanese better resembles the arbitration agreements in Gardner-Denver, Barrentine, and McDonald, rather than the agreements in Gilmer, Circuit City, and 14 Penn Plaza.  In Gardner-Denver and its progeny, the arbitration agreements required that employees arbitrate contractual disputes, but said nothing about arbitrating statutory claims.  In contrast, Gilmer, Circuit City, and 14 Penn Plaza dealt with agreements that explicitly required employees to arbitrate their statutory discrimination claims.  In this case, even the defendants admit

11

that the Celanese CBA did not require Gautier to arbitrate his ADA claim. See Defs.' Rebuttal, ECF No. 24, at 2–3. The arbitration here only involved Gautier's contractual rights under the CBA, not his rights under the ADA. This fact places Gautier's case squarely within the reasoning of <u>Gardner-Denver</u> and its progeny. Under that reasoning, the court may not give preclusive effect—either under a theory of claim preclusion or a theory of issue preclusion—to the arbitration decision favoring Celanese. To the extent that <u>Grimes</u> authorizes courts to apply issue preclusion in cases like this, this court declines to do so. In so holding, the court makes no finding on whether Gautier can survive a renewed motion for summary judgment once discovery is complete. The court may consider the arbitrator's factual findings when it evaluates Gautier's claim on any future motion, and will afford such findings the appropriate weight.

**B.**

Assuming issue preclusion does not apply, the defendants argue for summary judgment based on the arbitrator's interpretation of the contract between Gautier and Celanese. The arbitrator found that the Union and Celanese agreed that Gautier would use the EAP to attend a drug rehabilitation program during his medical leave. ECF No. 19-7, at 25. The arbitrator ruled that Gautier was bound by this agreement, and must attend a rehabilitation program before returning to work. <u>Id</u>. at 27. Based on this "contractual ruling" by the arbitrator, defendants argue that Celanese is preventing Gautier from working not because of his disability, but because he has failed to satisfy his contractual obligation to attend a rehabilitation program. The defendants claim that the arbitrator's contractual interpretation is binding on this court—even if issue preclusion does not apply—and that the arbitrator's interpretation is fatal to Gautier's ADA claim.

In support, defendants cite a second Fifth Circuit case, <u>Owens v. Texaco</u>, 857 F.2d 262 (5th Cir. 1988).[4] In <u>Owens</u>, a plaintiff sought recovery under Title VII for discriminatory termination.

---

[4] The parties again cite no Fourth Circuit precedent.

12

Id. at 264. The trial court was required to first determine whether the plaintiff was entitled to retroactive seniority under a CBA with his employer. Id. at 265. During a prior arbitration, the arbitrator ruled that the CBA provided no right to retroactive seniority. However, the trial court conducted its own review of the CBA and reached the opposite conclusion. Id. at 264–65. The Fifth Circuit reversed, holding that the trial court erred in not treating as conclusive the arbitrator's decision that the CBA afforded no right to retroactive seniority. Id. at 265.

The defendants reliance on Owens in unavailing, however. First, it is not clear that Owens would require summary judgment in this case, even if the court chose to apply it. Under Owens, this court must accept the arbitrator's ruling that Celanese need not lift its suspension until Gautier attends a drug rehabilitation program. However, Gautier does not limit his ADA claim to Celanese's requirement that he receive drug counseling. Instead, Gautier alleges that Celanese also required that he drastically reduce his intake of pain medication before returning to work. Compl., ECF No. 1, at ¶¶ 40–41. Gautier claims his prior injury requires pain medication, and that Celanese failed to reasonably accommodate his disability when it required him to reduce or eliminate use of prescription pain pills. Id.; see also Pl.'s Mem. in Opp., ECF No. 22, at 22. This requirement is separate and apart from Gautier's obligation to attend a rehabilitation program. The arbitrator's finding that Gautier must attend counseling is thus not dispositive of the entirety of Gautier's ADA claim.

Further, persuasive precedent from the Sixth Circuit conflicts with Owens. Owens stands for the proposition that an arbitrator's contractual interpretation is binding in a subsequent federal suit. However, the Sixth Circuit reached a different conclusion in Becton v. Detroit Terminal of Consolidated Freightways, 687 F.2d 140 (6th Cir. 1982). In Becton, the plaintiff brought suit under Title VII and 42 U.S.C. § 1981, claiming that his termination was racially motivated. The trial court held that it was bound by a prior arbitration decision, which concluded that the plaintiff had been

13

dismissed for "just cause." Id. at 142. The Sixth Circuit reversed, citing Gardner-Denver to hold that even an arbitrator's contractual interpretation does not bind a court when a plaintiff's contract claim is intertwined with his federal discrimination claim.[5] Id. While some deference could be afforded to the arbitrator's findings, the Sixth Circuit held that courts should not "unnecessarily limit[ ] the plaintiff's opportunity to vindicate his statutory and constitutional rights" by refusing to re-consider evidence rejected by the arbitrator. Id.

Absent controlling precedent from the Fourth Circuit, this court favors the Sixth Circuit's approach in Becton over the Fifth Circuit's approach in Owens. As noted above, Gardner-Denver, Barrentine, and McDonald counsel against arbitration preclusion when a plaintiff alleges violations of certain federal rights. Just as issue preclusion would usurp this court's responsibility to adjudicate federal discrimination claims, complete deference to an arbitrator's contractual interpretation would thwart the rights afforded by federal statute, at least in cases where a plaintiff's contractual claim is inextricably entangled with his discrimination claim.

A district court in the Northern District of Illinois reached an identical conclusion on similar facts. See Fleming v. U.S. Postal Serv. AMF O'Hare, No. 90-CV-2549, 1991 WL 278310, at *4 (N.D. Ill. Dec. 18, 1991). In Fleming, the plaintiff claimed that her employer had disciplined her based on race in violation of Title VII. Id. at *1–2. During arbitration, the arbitrator ruled that the employer followed the CBA when it disciplined the plaintiff. Id. at *3. However, the district court chose not to rest its analysis on the arbitrator's interpretation of the CBA. Instead, it applied Becton to hold:

> Although the arbitrator found that Fleming had been administered the progressive discipline required by the collective bargaining

---

[5] While Becton was decided well before Gilmer, Circuit City, and 14 Penn Plaza, the Sixth Circuit has continued to apply Becton. See Hance v. Norfolk S. Ry. Co., 571 F.3d 511, 519 (6th Cir. 2009) (noting that an "arbitrator's decision regarding 'just cause' for termination is not equivalent to the inquiry and burden-shifting framework mandated by Congress in an employment discrimination case.") (citing Becton, 687 F.2d at 142).

14

> agreement, Fleming is claiming that the progressive discipline was
> applied to her in a discriminatory fashion. Therefore, since her
> discrimination claims cannot be severed from her rights under the
> collective bargaining agreement, Fleming is entitled to de novo
> review in this court, and the arbitrator's decision is not final and
> conclusive.

Id. at *4. The Fleming court went on to conduct a de novo review of the plaintiff's discrimination claim, giving great weight to the arbitration decision.

In this case, Becton and Fleming counsel against dismissing Gautier's ADA claim based only on the arbitrator's interpretation of Gautier's contract. Gautier's "contractual" obligation to attend a drug rehabilitation program is intertwined with his discrimination claim under the ADA. Although the arbitrator found that Celanese was justified in suspending Gautier until he completed a rehabilitation program, Gautier claims that Celanese is applying this requirement in a discriminatory fashion. Since Gautier's discrimination claim is intertwined with his obligation under the agreement with Celanese, this court will not give preclusive effect to the arbitrator's interpretation. Instead, the parties may conduct any necessary discovery and the court will consider Gautier's claim de novo on any renewed motion for summary judgment, affording appropriate weight to the arbitrator's findings.

## C.

The defendants also ask this court to apply issue preclusion in Gautier's defamation claim, again arguing that the arbitrator already decided the relevant factual issues. The court agrees that there is a stronger argument to give preclusive effect to arbitration decisions in defamation actions, since the policies favoring de novo review of federal discrimination claims simply do not apply in cases brought under state law. However, even if this court agreed that issue preclusion was available in Gautier's defamation claim, it could not grant summary judgment for the defendants. The issues decided by the arbitrator are not the same issues relevant to Gautier's defamation claim.

15

To apply issue preclusion under Virginia law, a party must show that:[6]

> "(1) the parties to the prior and subsequent proceedings must be the same, (2) the factual issue sought to be litigated actually must have been litigated in the prior action, (3) the factual issue must have been essential to the judgment in the prior proceeding, and (4) the prior action must have resulted in a judgment that is valid, final, and against the party against whom the doctrine is sought to be applied."

Dacotah Mktg. & Research, L.L.C. v. Versatility, Inc., 21 F. Supp. 2d 570, 580 (E.D. Va. 1998) (citing Angstadt v. Atlantic Mut. Ins. Co., 249 Va. 444, 446–47, 457 S.E.2d 86, 87 (1995)). In addition to these elements, there also must be "mutuality," i.e., "a litigant cannot invoke issue preclusion unless he would have been bound had the litigation of the issue in the prior action reached the opposite result." Scales v. Lewis, 261 Va. 379, 382, 541 S.E.2d 899, 901 (2001).

In this case, the court finds that elements two and three of the preclusion test are not met, because the factual issues raised in Gautier's defamation claim were not essential to and actually litigated during arbitration. Under Virginia defamation law, Gautier must prove the (1) publication of (2) an actionable statement (3) with requisite intent. Schaecher v. Bouffault, __Va.__, 772 S.E.2d 589, 594 (2015). A statement is "actionable" when it is both false and defamatory. Id. Gautier identifies five alleged defamatory statements made by Fox in a letter:

- "Gautier is a known drug abuser."
- "[Gautier's] fellow employees did not want to be working with him because they felt unsafe."

---

[6] It is unclear whether Virginia or federal law should govern the issue preclusion analysis. Federal courts vary in what preclusion law they apply, even for federal claims. See 18B Wright, Miller, & Cooper, Federal Prac. & Proc. § 4475.1 (2d ed. 2002) ("The source of the law that governs the preclusion consequences of an arbitration award has not been much developed."). In this case, the defendants cite Virginia estoppel law in their brief, and Gautier does not object. The court will thus apply Virginia estoppel law. Further, application of Virginia law seems especially appropriate for Gautier's defamation claim, since this action arises under state law. See id. ("State law also seems to be consulted when an award that has not been confirmed is presented to a federal court in an action that involves a state-law claim."). Regardless, Virginia law tracks federal law on preclusion issues. Compare Angstadt v. Atlantic Mut. Ins. Co., 249 Va. 444, 446–47, 457 S.E.2d 86, 87 (1995), with Sedlack v. Braswell Services Group, Inc., 134 F.3d 219, 224 (4th Cir. 1998). The court's decision would thus be the same had it applied federal preclusion law. See, e.g., Watkins v. Duke Med. Ctr., No. 1:13-CV-1007, 2014 WL 4442936, at *1 (M.D.N.C. Sept. 9, 2014), aff'd, 592 F. App'x 226 (4th Cir. 2015) (applying both federal and North Carolina law in holding that res judicata barred a federal suit because the plaintiff presented similar claims during a prior arbitration).

- "Mr. Gautier was supposed to get 'cleaned up' while off of work recently."
- "The medical department has requested a list of prescriptions and he agreed to provide one but we still have not received it from him."
- Gautier "has also demonstrated no evidence of rehabilitation."

Compl. ECF No. 1-1, at ¶¶ 45–46. Gautier claims that these statements falsely imply that he illegally abused drugs. The defendants claim that the arbitration decision shows that each of these statements are true. In support, the defendants point to several findings by the arbitrator:

- "[T]he evidence contains credible reports from more than one supervisor that [Gautier] was so impaired at work that they feared for his safety as well as the safety of fellow employees. Supervisors were unreasonably limited in who they could assign to work with [Gautier] because so many employees had reported that they did not want to work with him." ECF No. 19-7, at 21.
- It was "reasonable" for Celanese's doctor to believe that Gautier "needed to go to a rehabilitation facility" for a "probable addiction problem." Id. at 23.
- "[I]t was reasonable for management to expect [Gautier] to go home and utilize the assistance of the EAP program, as well as the assistance of his doctors to get himself in shape to return to work fit for duty." Id. at 21.
- "[Gautier] had not properly complied with the main condition [of his return to work] that he undergo rehabilitation." Id. at 27.

Based on these findings, the court agrees that the arbitration decision seems to show that at least some of Gautier's co-workers felt he was unsafe, that he failed to provide certain prescription lists, and that he was required to attend a rehabilitation program while on medical leave. However, the arbitration decision does not affirmatively prove that all the statements made by Fox are true. The arbitrator only addressed whether or not the company had a reasonable basis for preventing Gautier from returning to work. The arbitrator never addressed the defamation issue, nor the statements made by Fox. While many of the arbitrator's factual findings are relevant to show that the company had reasonable grounds to continue Gautier's suspension, the arbitrator never

17

concluded that Fox made no "actionable" statements so as to preclude Gautier's defamation claim under Virginia law.

Further, Gautier's defamation action is based on his claim that Fox falsely implied that Gautier was a drug addict who abused illegal drugs. Though the arbitration decision might establish the defendants' "reasonable" belief that Gautier was affected by his use of prescription drugs, it never explicitly states that Gautier was abusing illegal drugs. The arbitrator actually suggests that Gautier's drug problem was not related to illegal drug abuse, but rather Gautier's need for significant amounts of legitimate pain medication that affected his ability to focus. For example, the arbitrator states in his closing paragraph that Celanese has the right to expect that Gautier will not "be under a regiment of drug therapy that raises a reasonable issue as to whether he will be alert enough . . . to work safely." ECF No. 19-7, at 28. He goes on to state that "[i]f [Gautier's] pain doctor is of the opinion that [Gautier] still has a pain level that requires him to take more drugs than the Medical Director believes will allow [Gautier] to be sufficiently alert at the workplace . . . then [Gautier] will have to accept the fact the he is no longer fit for duty." Id. These statements show that the arbitrator never considered the factual issues raised in Gautier's defamation claim; namely, whether Fox's statements implied that Gautier was a drug abuser, and if so, whether those statements were false and defamatory. While the arbitrator certainly considered Gautier's use of pain medication in the context of Celanese's concerns about workplace safety, he never addressed the issue of Gautier's illegal drug abuse.

The court thus finds that the factual issues raised in Gautier's defamation claim were not directly litigated during the arbitration between Gautier and Celanese, and were not essential to the decision in that case. The court will thus deny the defendants' motion for summary judgment on Gautier's defamation claim. In so holding, the court again does not address whether Gautier's defamation claim can survive a renewed motion for summary judgment at the close of discovery. As

18

with Gautier's ADA claim, the parties may supplement the record with additional facts, and the court will accord the appropriate weight to the arbitration decision on any later motion filed by the parties

**VI**.

For the reasons set forth above, the court finds that the defendants have failed to show that the arbitration decision has preclusive effect in the current case, and the court will **DENY** the defendants' motion for summary judgment, ECF No. 18. The court will also **DENY as moot** Gautier's motion to deny in part the motion for summary judgment, ECF No. 20.

An appropriate Order will be entered.

Entered: October 28, 2015

*/s/ Michael F. Urbanski*

Michael F. Urbanski
United States District Judge